**Michael OPPENSTEIN, Plaintiff,**

v.

**CONSOLIDATED SUN RAY, INC., and Berkson Brothers, Incorporated, Defendants.**

**No. 13622-2.**

United States District Court
W. D. Missouri, W. D.
April 5, 1963.

Sheffrey, Ryder & Skeer, Kansas City, Mo., for plaintiff.

Margolin & Kirwan, Kansas City, Mo., Wolf, Block, Schorr & Solis, Cohen, Philadelphia, Pa., for defendants.

GIBSON, Chief Judge.

This cause having come on for trial on March 18, 1963, and the parties hereto having agreed that the cause of action asserted herein by plaintiff against defendant Consolidated Sun Ray, Inc., involved the invoking of the equitable jurisdiction of this Court, and plaintiff having refused to agree that the verdict of the jury demanded by defendants, be of the same force and effect as though said defendant were entitled to a jury as a matter of right, and further, the parties having agreed and the Court having ruled that the verdict of the jury with regard to said defendant Consolidated Sun Ray, Inc. be advisory only, and the trial having been completed on March 21, 1963 with a verdict from the jury in favor of plaintiff and against defendant Consolidated Sun Ray, Inc., the Court makes the following Findings of Fact and Conclusions of Law:

FINDINGS OF FACT

1. That all of the stock of defendant Berkson Brothers, Inc., hereinafter called Berkson's was owned by defendant Consolidated Sun Ray, Inc., hereinafter called Consolidated, at all times involved in this cause, and more particularly from and after December 4, 1939 to the date of trial inclusive.

2. On December 4, 1939, plaintiff and defendant Berkson's entered into a certain lease for the property at 1100 Main Street in Kansas City, Missouri, which lease ran for a term of 26 years and 11 months ending June 30, 1967.

3. Prior to June or July 1955, defendant Berkson's was the sole obligor as lessee under said lease.

4. From and after June or July 1955, defendant Consolidated established certain changes in its dealings with its said wholly-owned subsidiary, defendant Berkson's as hereinbelow set forth.

(a) Eliminated Berkson's control of the monies received from sales in its retail store at said address, requiring Berkson's to make deposits of such money receipts in a bank account in the Commerce Trust Company in Kansas City, and except for cash payroll payments and small petty cash funds withheld, reserving to Consolidated alone, through its officers and paid employees, the right to write checks on said bank account.

(b) In 1959, said bank account was closed, and a new bank account was opened at said bank in the name of defendant Consolidated, Trustee, so that thereafter defendant Berkson's operated without a checking account in its own name at all.

(c) At the time of said bank account change, Consolidated borrowed money from Walter Heller & Company, and as part of the security for such loan to Consolidated, caused the accounts receivable of Berkson's to be pledged with said lending company.

(d) Independent buying discretion on the part of Berkson's was eliminated for the most part, and defendant Consolidated controlled the merchandising poli-

cies for said retail store operation, buying practically all merchandise to be sold in said store, warehousing the same in New York City, and shipping the same from said New York City warehouse, owned and operated by Consolidated, to said store in Kansas City, Missouri. Said merchandising policy resulted in a change in the operation of said retail store in that it was caused to sell a lower price range of merchandise and was caused to operate on a substantially smaller inventory. Further, the local management at said retail store could not exercise its own discretion with regard to the pricing of such merchandise, the retail price tags being affixed in New York City, nor could it take mark-downs, except for isolated instances of damaged goods, without authority from a New York City buyer employed by Consolidated.

(e) All insurance required under said lease to be carried by the lessee, including fire insurance on the demised premises and public liability insurance, was changed from the name of defendant Berkson's as the insured lessee, to defendant Consolidated, and in some instances, to defendant Consolidated and its wholly-owned subsidiaries.

(f) All advertising for said retail store was prepared in New York City and controlled by Consolidated, not only with regard to what was to be advertised, but also with regard to the size of the ads promoting the merchandise to be sold.

(g) The directors and officers of defendant Berkson's were persons employed by defendant Consolidated, and were the same persons who were directors or officers of defendant Consolidated. There was no director or officer of Berkson's who lived in the Kansas City, Missouri trade area, and the local store manager was not a director or officer of Berkson's.

(h) Berkson's together with other subsidiaries and store divisions wholly owned and operated by Consolidated, was charged a share of the cost of operating Consolidated's accounting office and warehousing operation in New York City, and in 1959 when Consolidated's accounting office was moved from New York City to Philadelphia, Pennsylvania, Berkson's was charged a share of the overhead for said office in Philadelphia.

(i) In 1956, just after said changeover, defendant Consolidated entered into a Chapter XI Reorganization Plan under the Bankruptcy Laws. In 1955, prior thereto, in which year Berkson's began contributing to said overhead charges in New York City, Berkson's costs of operating were substantially increased as evidenced by its income tax returns filed in the state of Missouri; and, therefore, despite, certain reductions in personnel in the Kansas City store operation, its salaries, rent and other deductions were increased in a sum well over $125,000.00. Its loss in 1955, as contrasted with 1954, was over $100,000.00 greater.

(j) In 1956 Berkson's sales dropped $224,000.00 and its merchandise cost for inventory was reduced by Consolidated in the amount of $220,000.00.

(k) Many of the corporate minutes for Berkson's were printed forms apparently used by Consolidated for all of its subsidiaries, with the name "Berkson's" typed in.

(l) All correspondence pertaining to the business of the lessee under said lease, whether written to lessor, to third parties or to agents of Consolidated, were on defendant Consolidated's letterhead and were for the most part signed "Consolidated Retail Stores, by." In such correspondence, Consolidated referred to said lease, said leasehold estate and the demised premises as "its lease," "its property" and "its rent." The latter reference was by general counsel for Consolidated.

(m) Consolidated employed Marx Realty and Improvement, Inc., and in letters exchanged between the two companies and third parties, efforts were made for Consolidated to sell the leasehold estate for a consideration to be paid to Consolidated.

(n) In October 1961, the retail store on the leased premises was closed, and the inventory was sold to Macy's. The con-

sideration therefor was paid to and kept by Consolidated, and no part thereof was made available to apply on the rent due plaintiff for November 1961, or thereafter.

(o) From 1955 to November 1961, defendant Consolidated, through its wholly owned subsidiaries and through its division stores, operated some 39 stores as a single chain store operation, one such store being defendant Berkson's. Each of these stores, whether a subsidiary corporation or a division of Consolidated, operated under its own name and dealt with the retail public under its own name, and not under the name of Consolidated. However, all were treated the same by Consolidated, except with regard to the type of intercompany accounts maintained for them by Consolidated with regard to insurance, merchandising, advertising, and control of monies collected. The costs allocated and charged to Berkson's by Consolidated were the same as though Berkson's was one of the division stores of Consolidated rather than a wholly owned subsidiary.

(p) Defendant Consolidated Sun Ray, Inc., and its predecessors, did however, maintain substantially all the legal formalities required of defendant Berkson's as a separate corporation, such as filing necessary papers and reports to the state of Missouri required of corporations, and also Missouri corporate tax returns.

5. In the latter part of October 1961, the leased premises were vacated. Notices of default for failing to operate the store under said lease were sent to Consolidated and properly served on it on ·or about October 28, 1961. Notices of default were sent to Consolidated and properly served thereon for failure to pay the November 1961 rent, on November 6, 1961. On November 20, 1961 a notice was sent by plaintiff and properly served on Consolidated advising that plaintiff as lessor would avail itself of its remedies under said lease, and as the agent of and for the account of and at the cost and expense of Consolidated, would take over the premises to protect the same and to attempt to relet the same. Said notice also advised that the premises were locked and that Consolidated has "retained the key thereto." On November 21, 1961, the keys were returned with a letter on the Berkson letterhead, that being the first and only letter in evidence on a Berkson letterhead since 1955. On one occasion plaintiff caused a letter to be sent to Berkson's at its Kansas City address, and plaintiff received an answer from Consolidated on a Consolidated letterhead.

6. From and after November 1961, there has been a total default of performance under said lease by both defendants herein.

## CONCLUSIONS OF LAW

1. Defendant Consolidated had complete and absolute control over the actions and rights of defendant Berkson's at all times involved in this cause; and from and after July 1955, defendant Consolidated used said power and control for the benefit of Consolidated, rather than for the benefit of Berkson's.

2. From and after June or July 1955, Consolidated elected not to respect the separateness of the corporate entity of defendant Berkson's, and treated said wholly owned subsidiary as a division, department or adjunct of defendant Consolidated, causing Berkson's assets to be intermingled with its own; in other words, defendant Berkson's became the alter ego of defendant Consolidated.

3. Through the use by Consolidated of Berkson's as a division, conduit or instrumentality of Consolidated, and the loss of control by Berkson's of its own destiny and the loss of power to protect its own assets, and the imposition of excessive financial burden on Berkson's for the benefit of Consolidated, an injustice was done to plaintiff who was caused to sustain an injury thereby.

4. From and after June or July 1955, by reason of defendant Consolidated disregarding the separate corporate entity of defendant Berkson's, the appropriation by Consolidated of Berkson's rights in and to its assets, and the resulting injustice to plaintiff, Consolidated

should be held liable and is liable on the actions and obligations of defendant Berkson's the same as though such acts and obligations were the acts and obligations of defendant Consolidated.